# IN THE COURT OF APPEALS OF IOWA

No. 24-0595
Filed August 7, 2024

**IN THE INTEREST OF W.G.-C.,**
**Minor Child,**

**S.Z., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford, Judge.

The mother appeals the termination of her parental rights.  **AFFIRMED.**

Chad Frese and Joel C. Waters of Kaplan & Frese, LLP, Marshalltown, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Mary Cowdrey of Public Defender's Office, Marshalltown, attorney and guardian ad litem for minor child.

Considered by Badding, P.J., Buller, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

The juvenile court terminated the mother's parental rights to five-year-old W.G.-C. pursuant to Iowa Code section 232.116(1)(f) (2023). The mother appeals, arguing the statutory ground for termination was not met and challenging whether termination is in the child's best interests since W.G.-C. remains in the custody of his father.

Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). This means that while we respect the juvenile court's factual findings, especially on credibility issues, "we examine the whole record, find our own facts, and adjudicate rights anew on issues properly before us." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 629 (Iowa 1996).

**Statutory Grounds.** The juvenile court terminated the mother's parental rights under section 232.116(1)(f), which allows for termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges both the third and fourth element.

She argues the third element was not met because W.G.-C. was not removed from the custody of both parents—the child was in the father's custody at the time of the termination trial. *See* Iowa Code § 232.116(1)(f)(3). But the statute "allows the termination of parental rights of the noncustodial parent even

though legal custody of the child is placed with the other parent." *In re N.M.*, 491 N.W.2d 153, 156 (Iowa 1992); *see also* Iowa Ct. R. 4.1(17) ("Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."). And here, it is undisputed that the district court entered a formal order removing W.G.-C. from the mother's custody in November 2022, which was more than twelve months before the December 2023 termination hearing. *See In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (considering how long children had been removed from parental custody at the time of the termination trial). So the third element was met.

Next, the mother argues the fourth element was not met because W.G.-C. could have been returned to her custody at the time of the termination trial. *See id.* § 232.116(1)(f)(4). The mother points to her unresolved criminal charge for child endangerment—arguing we cannot conclude W.G.-C. is unsafe in her care "until [her] case and appeals have been exhausted"—and claims that drug use was never confirmed at the family home. The mother's interpretation of section 232.116(1)(f)(4) is too narrow. Here, the Iowa Department of Health and Human Services became involved with the family after police found methamphetamine in the family home in November 2022. While W.G.-C. did not test positive for methamphetamine at the time of removal, the mother did. The mother also tested positive for methamphetamine in March, July, and October 2023. In fact, every time the mother drug tested for the department, the result was positive for methamphetamine. And there is no reason to believe that the twenty-three drug tests the mother missed would have been clean. *See In re A.D.*, No. 20-1182, 2020 WL 7022391, at *3 (Iowa Ct. App. Nov. 30, 2020) (collecting cases

where the court has presumed missed tests would have been positive for drugs). The mother was generally not forthcoming regarding her substance use, and she had not re-engaged in treatment following her positive tests. Overall, the mother seemed unable or unwilling to internalize the impact her drug use had on her ability to safely parent W.G.-C. But as our case law provides, "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020); *accord In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014) ("[A] parent's methamphetamine addiction by itself can result in 'harmful effects' to the child, thereby justifying state intervention to protect the child."). The State proved W.G.-C. could not be returned to the mother's custody at the time of the termination trial.[1]

**Best Interests and Permissive Factor.** Next, the mother argues termination of her parental rights is not in the child's best interests because W.G.-C. remained in his father's custody.[2] *See* Iowa Code § 232.116(2), (3)(a).

---

[1] In another section of her brief, the mother mentions "reasonable efforts" in passing and argues they were not made. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (recognizing that "[t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent"). But the mother has neither fully developed an argument nor pointed us to where in the record she both raised the issue to the juvenile court and received a ruling. We do not consider this issue. *See In re W.J.*, No. 21-1991, 2022 WL 610559, at *1 (Iowa Ct. App. Mar. 2, 2022) (finding a parent waived an issue by making only a "conclusory statement unaccompanied by factual arguments, legal arguments, legal citations, or references to the record"); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) ("The [d]epartment has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing. We conclude [the parent] has not preserved these claims for our review on appeal." (internal citation omitted)).

[2] We note that in the TPR order, the juvenile court stated, "No relative has legal custody of [W.G.-C.]" But this statement appears to be in error, as the record indicates the father had legal custody of the child.

The juvenile court need not terminate parental rights when a relative has legal custody of the child. *See* Iowa Code § 232.116(3)(a). This factor is "'permissive, not mandatory,' and the court may use its discretion 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). The mother, as the parent resisting termination, has the burden to convince the court to apply the permissive factor. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

It is not clear the mother made any progress in the thirteen months between the removal of W.G.-C. from her custody and the termination trial; without some reason to believe the mother is on the path to sobriety, it is not in the child's best interests to leave the door open for future involvement. *Cf. In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997) ("A child should not be forced to endlessly await the maturity of a natural parent."). Termination of the mother's rights is in W.G.-C.'s best interests. *See A.S.*, 906 N.W.2d at 475 ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and

---

In the July 29, 2023 permanency review order, the court recited that W.G.-C. "was put in father's custody and placement" as part of the April 24, 2023 permanency order. Reports from the department show it also understood the father to have legal custody of the child—it recommended that "care and custody" of the child should remain with his father. *Cf.* Iowa Code § 232.102(1) (recognizing the difference between custody and placement); *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (distinguishing between "legal custody" and being in the care of a relative while the department has legal custody). And we have found no change in disposition following the April 24 permanency order. *Cf.* Iowa Code § 232.103.

willingness of a family relative to take the child. The child's best interests always remain the first consideration." (citation omitted)).

Because the State proved the grounds for termination under section 232.116(1)(f) and we decline to apply the permissive factor in section 232.116(3)(a), we affirm.

**AFFIRMED.**